COMMERICAL UNION ASSURANCE COMPANIES, JOHN BRAM AND LAWRENCE GRADY, JR., PLAINTIFFS, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND BARTON F. SHARP & SON, DEFEND-ANTS.

Superior Court of New Jersey
Law Division

Decided March 9, 1978.

*Mr. John P. Morris* for plaintiffs (*Messrs. Horuvitz, Perlow & Ritter,* attorneys).

*Mr. Anthony D. Buonadonna* for defendant State Farm Mutual Automobile Insurance Company (*Messrs. Tuso, Gruccio, Pepper, Buonadonna, Giovinazzi & Butler, P. A.,* attorneys).

*Mr. Mark Soifer* for defendant Barton F. Sharp & Son (*Messrs. Horn, Weinstein, Kaplan & Goldberg,* attorneys).

MILLER, J. C. C. (temporarily assigned). This is an action brought by plaintiff Commercial Union Assurance Companies, insurer of plaintiff John Bram, in order to compel defendants, State Farm Mutual Automobile Insurance Company and Barton F. Sharp & Son, to extend primary liability insurance to plaintiff Lawrence Grady, Jr. The matter is before the court for a ruling on the motions for summary judgment filed on behalf of the above-named parties.

In January 1973 plaintiff Lawrence Grady, Jr. made application to the New Jersey Automobile Insurance Plan (AIP), commonly known as the Assigned Risk Plan, for assignment of an automobile liability carrier to provide him with liability insurance coverage on a 1973 Chevrolet pick-up truck. This application was provided by defendant Barton

F. Sharp & Son, who assisted him in completing the form and forwarded the completed application to AIP on January 19, 1973. Thereafter, defendant State Farm Mutual Automobile Insurance Company was assigned by AIP to extend insurance coverage to Grady for his truck.

The initial policy extended by State Farm was for a policy period of February 2, 1973 to February 2, 1974. The effective dates of this policy were later changed to January 20, 1973 through January 20, 1974. Premiums were properly paid on this initial policy, as well as payments on the renewal policy covering the January 20, 1974 to January 20, 1975 policy period.

Toward the end of the policy year State Farm sent to Grady and defendant Barton Sharp a Premium Notice of Renewal to advise of a premium due date of January 20, 1975 for extension of coverage for the forthcoming January 20, 1975-76 policy year. This renewal notice indicated a premium due in the amount of $244. Barton Sharp sent a separate premium notice to Grady on December 10, 1974 indicating an initial installment due of $113.60 to be paid by January 2, 1975.

On February 24, 1975 Anne Marie Grady, wife of Lawrence Grady, went to the office of Barton Sharp to determine the status of coverage on Grady's truck and also on her own 1968 Buick, which was insured under a separate policy issued by State Farm. An employee of Barton Sharp mistakenly referred to the 1974 rather than the 1975 accounts receivable register and informed Mrs. Grady that the Chevrolet truck policy had been paid up and issued a temporary insurance card for that vehicle. Mrs. Grady then made a $60 payment towards her Buick policy.

Immediately following Mrs. Grady's departure from Barton Sharp's office the error was discovered and a letter was written to Grady so advising him and further informing him there had been no renewal of the truck policy. This letter further stated that a down-payment was due immediately in the amount of $114 and that the $60 left by Mrs. Grady

would be applied to his policy, leaving a balance of $54. Finally, the letter advised that the next installment on this vehicle would be due on April 20, 1975, in the amount of $73.

Barton Sharp again wrote to Grady on March 24, 1975 concerning both the Buick and Chevrolet policies and indicating that a balance was due in the amount of $126. Sharp also advised that a Notice of Intent to Cancel had been received regarding the Buick policy.

On April 2, 1975 the Gradys made a payment of $120 to Barton Sharp, who then forwarded a check in the amount of $143.40 to State Farm, indicating premium payments of $64.80 on the Buick policy and $78.60 on the Chevrolet policy.

On April 5, 1975 plaintiff John Bram was involved in an accident while operating Mr. Grady's Chevrolet truck, colliding with a motorcycle driven by Lance DiOrio. This accident was not reported to State Farm until June 4, 1975 when a liability accident notice was forwarded to State Farm by Barton Sharp.

State Farm notified Barton Sharp on April 9, 1975 and advised that payment of April 2, 1975 would not be accepted on the Chevrolet policy due to the fact it had expired for nonrenewal. State Farm at that time suggested that the policy be renewed as of April 9, 1975 with "time out of force."

On April 10, 1975 State Farm again contacted Barton Sharp and advised that they would not renew the policy "time out of force" as of April 9, 1975 but that Mr. Grady should request the truck be added. State Farm also informed that they were returning the money sent for the truck policy.

By letter dated April 10, 1975 Barton Sharp informed Grady that he had no insurance coverage on the truck at the time of the accident. If he desired coverage he was instructed to request it be added and remit an estimated premium from the date of request to January 20, 1976 in the amount of $191.

Finally, on April 16, 1975 State Farm sent Barton Sharp a refund check in the amount of $78.60 to be forwarded to Grady and again advising that the Chevrolet policy had expired for nonrenewal on January 20, 1975.

In their individual motions defendants State Farm and Barton Sharp join in arguing the position that the policy of insurance issued by State Farm to Grady had expired for nonrenewal on January 20, 1975 and accordingly that Grady had no coverage on his Chevrolet truck at the time of the April 5, 1975 accident.

Plaintiffs' cross-motion for summary judgment counters by arguing that a notice of cancellation is required to be sent to the insured before a policy may be effectively cancelled.

Pursuant to the authority delegated at *N. J. S. A.* 17:29D-1 *et seq.*, the Commissioner of Insurance adopted the New Jersey Automobile Insurance Plan (AIP), *N. J. A. C.* 11:3-1.1 *et seq.*, effective January 31, 1972, as *R.* 1972 *d.* 20. Under the AIP a distinction has been drawn between cancellation of a policy for nonpayment during the course of a policy period still in effect, and expiration or lapse of a policy, upon the completion of the coverage term and non payment of a renewal premium. *N. J. A. C.* 11:3-1.14, "Company's notice to applicant," provides in pertinent part:

(i) At least 45 days prior to the inception of the first and second renewal policies the designated carrier shall notify the applicant that:
1. A renewal policy will be issued, provided the renewal premium stipulated by such carrier is received at least 15 days prior to the inception of such policy. * * *

*N. J. A. C.* 11:3-1.19, "Cancellation," provides, among other things:

(b) A company which has issued a policy or binder under this Plan shall have the right to cancel the insurance by giving notice as required in the policy or binder if the insured:

5. Has failed to pay any premiums due under the policy.

\* \* \* \* \* \* \* \*

(d) A statement of facts in support of each such cancellation shall be furnished to the producer of record and to the insured . . . ten days prior to the effective date of cancellation.

Plaintiffs argue that State Farm sent no notice of cancellation to Grady as required by *N. J. A. C.* 11:3–1.19. However, defendants did send Grady a premium notice of renewal in compliance with *N. J. A. C.* 11:3–1.14. The court finds that under the AIP the only notice required to be sent an insured in an expiration for nonrenewal situation is the 45-day notice. The 10-day notice in *N. J. A. C.* 11:3–1.19 clearly contemplates the cancellation for non-payment of premium of a policy already issued and in force. Although there is a three-year assignment (*N. J. A. C.* 11:3–1.13) under the AIP, each yearly policy is separate and distinct. The court is not convinced by plaintiff's argument that an insured, during the three-year period, is entitled to the notice protections as to nonpayment cancellations. The three-year assignment period does not have the effect of transforming the three year-long policies into one continuing one. Each one must be renewed in accordance with the terms of the contract and the governing rules of the AIP. State Farm, in giving its insured a 45-day notice of renewal, did all that the AIP requires it to do. Accordingly, the court finds that Grady's Chevrolet policy expired for nonrenewal on January 20, 1975.

It is further plaintiffs' position that the payments made by the Gradys — $60 on February 24, 1975 and $54 on April 2, 1975 — were made to Barton Sharp, acting as authorized broker for State Farm. Accordingly, plaintiffs maintain that as of April 2, 1975 the total initial installment premium of $114, which was due on January 20, 1975, had been paid, thereby entitling plaintiff Grady to a renewal of his Chevrolet policy three days prior to the accident.

An insurance broker is defined by *N. J. S. A.* 17:22–6.2 as follows:

An insurance broker is hereby defined to be an individual who, for a commission or brokerage consideration, shall act or aid in any manner in negotiating contracts of insurance, or soliciting or effecting insurance as agent for an insured or prospective insured, other than himself, or an individual who, being a licensed agent, places insurance in an insurance company which he does not represent as agent.

It is uncontroverted that Barton Sharp meets the definition of broker. However, *N. J. S. A.* 17:22–6.2a, "Authorization entitling broker to receive insurance premium on behalf of insurer," reads in pertinent part:

Any insurer which *delivers* in this State to any insurance broker a *contract of insurance* . . . pursuant to the *application or request of such broker*, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance or of delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter on such contract, provided such payment is received by such broker within 90 days after the due date of such premium or installment thereof or after the date of delivery of statement by the insurer of such additional premium. [Emphasis supplied].

Having already determined that the policy in question had expired on January 20, 1975 for failure to renew, it follows that State Farm had not delivered a contract of insurance pursuant to the application or request of a broker within the meaning of *N. J. S. A.* 17:22–6.2a. Therefor, Barton Sharp was not authorized to accept premiums on State Farm's behalf.

Plaintiff relies on *Kubeck v. Concord Ins. Co.*, 103 *N. J. Super.* 525 (Ch. Div. 1968), aff'd 107 *N. J. Super.* 510 (App. Div. 1969), for the proposition that *N. J. S. A.* 17:22–6.2a circumscribes and limits the right of a carrier to cancel a policy where the premium has been collected by the broker for the insurer.

Plaintiffs' reliance on *Kubeck* is, however, misplaced. In *Kubeck* the court was concerned with the cancellation of an existing policy, not as here, with a renewal. Additionally, in *Kubeck* the premium payment was made to the broker before the cancellation notice was sent. Additionally, since publication of *Kubeck* the Appellate Division has decided the case of *Weathers v. Hartford Ins. Group*, 153 *N. J. Super.* 563 (App. Div. 1977). In *Weathers* the court held that the purpose of *N. J. S. A.* 17:22–6.2 was to remedy the "misappropriation, conversion or other misconduct of an insurance broker" and that this statute did not give to the broker the authority to reinstate cancelled policies, or to extend the time available to insured to pay the policy premium.

In the case at bar the payments to the broker were made after the policy had already expired for non renewal. Accordingly, Grady was in the class of persons defined in *N. J. A. C.* 11:3–1.21(e), "Re-eligibility," which reads:

(e) A risk that fails to pay the renewal premium quoted by the assigned carrier in accordance with the provision of Section 1.14 (Company's notice to applicant) of this subchapter may reapply for assignment at any time.

If the application had been made within 60 days after expiration, under *N. J. A. C.* 11:3–1.21(f), Grady would have been reassigned to State Farm. If, however, application had been made more than 60 days after expiration, under *N. J. A. C.* 11:3–1.21(g) he would have been assigned to a new carrier. Without such an application and reassignment to State Farm, Barton Sharp was after January 20, 1975 simply a broker not affiliated with State Farm and without authority to accept premiums contemplated by *N. J. S. A.* 17:22–6.2a.

■ Plaintiffs also argue that State Farm should be estopped from denying that Barton Sharp could accept premiums on its behalf based upon State Farm's private policy of accepting premiums forwarded to it within 39 days of

expiration or cancellation with time out of force. However, there had been no tender of full premium or the required down-payment within this 39-day period. Thus, when Barton Sharp accepted Grady's payments on February 24, 1975 and April 2, 1975, such payments were not in State Farm's behalf.

In light of the foregoing, defendant State Farm's motion for summary judgment is granted, and plaintiffs' cross-motion for summary judgment against defendant State Farm is denied.

Plaintiffs' cross-motion for summary judgment offers an alternative theory of recovery. Assuming that State Farm was not required to extend coverage because no valid policy was in effect on April 5, 1975, they argue that Barton Sharp's actions were such as to require that it extend equivalent coverage to Grady. They contend that Barton Sharp, acting as a broker on behalf of plaintiff Grady, breached its duty to obtain an appropriate policy of automobile insurance.

As pointed out above, upon expiration of Grady's policy for nonrenewal, defendant Barton Sharp was no longer a broker acting on behalf of State Farm. Barton Sharp's initial error was in misinforming Mrs. Grady on February 24, 1975 that her husband's Chevrolet policy had been paid up. This mistake was partially cured the same day by Sharp's letter. However, although Sharp's letter correctly informed Mr. Grady that his policy had not been renewed, it did not advise him that his policy had expired and that under the Plan he would have to apply for reassignment to State Farm or assignment to a new carrier. *N. J. A. C.* 11: 3–1.21.

Additionally, Barton Sharp should have realized that the $60 received by them on February 24, 1975 was insufficient either as full premium on the renewal policy or as down payment on same.

Our Supreme Court has made clear its stand on an insurance broker's duty towards its insured in *Rider v. Lynch,* 42 *N. J.* 465 (1964):

One who holds himself out to the public as an insurance broker is required to have the degree of skill and knowledge requested to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission. He is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected. If he neglects to procure the insurance or if the policy is *void* or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes *liable to his principal for the loss sustained thereby*. [at 476; emphasis supplied]

The court's opinion in *Rider v. Lynch* cites the case of *Barton v. Marlow*, 47 *N. J. Super*. 255 (App. Div. 1957), which reads:

It, is, moreover, the rule that where one undertakes to effect insurance he impliedly undertakes to give notice to the applicant in the event of his failure or unability to procure it . . . There were intimations in the course of plaintiff's case that the . . . policy had been cancelled by the company prior to its expiration, although it is not clear for what reason. The jury could have concluded that if there was a prior cancellation of the policy, exercise of reasonable attention to the matter on defendants' part would have apprised him of that fact, and that if he could not then get the policy reinstated, due diligence would have led him to notify the plaintiff in time to enable the latter to obtain insurance elsewhere prior to the accident. *A similar finding could have been made if the difficulty was an inability by defendant to effect a renewal of the policy at its expiration.* [at 259; emphasis supplied]

 Barton Sharp breached its duty as broker to plaintiff Grady by failing to advise him that his policy had expired on January 20, 1975, and that he must reapply to the Plan for assignment to a carrier. Barton Sharp was negligent in failing to adequately advise Mr. Grady in letter of February 24, 1975, of State Farm's 39-day reinstatement policy. Had Grady made a payment of full premium or the requisite down-payment by February 28, 1975, his policy would have been reinstated and in force when the accident occurred. Barton Sharp was negligent in failing to inform Grady by its letter of March 24, 1975 that his policy had expired.

Finally, we find that Sharp was negligent in forwarding Grady's premium to State Farm on April 2, 1975 as a first installment on the expired policy. Had they applied for reassignment under the Plan, a 40% down payment would have provided coverage that would have been in force on April 4, 1975.

In light of the foregoing, defendant Barton Sharp's motion for summary judgment is denied, and plaintiffs' cross-motions for summary judgment against defendant Barton Sharp is granted.